

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 20-

15 U.S.C. § 1

FLORIDA CANCER SPECIALISTS
& RESEARCH INSTITUTE, LLC

## DEFERRED PROSECUTION AGREEMENT

The United States Department of Justice Antitrust Division ("United States") and FLORIDA CANCER SPECIALISTS & RESEARCH INSTITUTE, LLC ("FCS" or "the Company"), a Florida limited liability company, by and through its undersigned representative, pursuant to authority granted by its Executive Board, enter into this Deferred Prosecution Agreement, the terms and conditions of which are as follows:

Criminal Information and Acceptance of Responsibility

1. FCS acknowledges and agrees that the United States will file the attached one-count criminal Information in the United States District Court for the Middle District of Florida, Fort Myers Division. The Information will charge FCS, beginning as early as 1999 and continuing through at least as late as September 2016, with conspiring with Oncology Company A and other persons and entities to suppress and eliminate competition by agreeing to allocate medical oncology

treatments for cancer patients to FCS and radiation oncology treatments for cancer patients to Oncology Company A in Collier, Lee, and Charlotte counties of Florida ("Southwest Florida"), in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. In so doing, FCS:

(a) knowingly waives its right to indictment on these charges, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); and

(b) knowingly waives for the purposes of this Agreement and for the purposes of any charges by the United States arising out of the conduct described in the Statement of Facts (attached hereto as Attachment A and incorporated by reference into this Agreement) any objection with respect to venue and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the Middle District of Florida, Fort Myers Division. The United States agrees to defer prosecution of FCS pursuant to the terms and conditions described below.

2. FCS acknowledges that it is legally responsible for the acts of its partners, members, officers, directors, employees, and agents that give rise to the charge in the Information. FCS admits, accepts, and acknowledges that the facts set forth in the Statement of Facts are true and accurate. Should the United States pursue the prosecution that is deferred by this Agreement, FCS agrees that it will neither contest the admissibility of, nor contradict, any of the facts set forth in the Statement of Facts

in any such proceeding, including any guilty plea or sentencing proceeding. Neither this Agreement nor the criminal Information is a final adjudication of the matters addressed in such documents.

### Parties to and Scope of the Agreement

3. FCS is organized under the laws of Florida and headquartered in Fort Myers, Florida. This Agreement binds FCS and the United States Department of Justice Antitrust Division. It specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities.

### Length of the Agreement

4. This Agreement is effective for a period beginning on the date on which the Information is filed (the "Effective Date") and ending on December 31, 2023 (the "Term"), except for the obligations set forth in Paragraphs 6–7 below. FCS agrees that in the event that the United States determines, in its sole discretion, that FCS or any of its subsidiaries or corporate affiliates has violated any provision of this Agreement, an extension or extensions of the term of the Agreement may be imposed by the United States, in its sole discretion, for up to a total additional time period of one year, without prejudice to the United States' right to proceed as provided in Paragraphs 17–21 below. Any extension of the Agreement extends all terms of this Agreement for an equivalent period but does not extend the due date for payments provided in Paragraph 8 below.

Relevant Considerations

5.  The United States enters into this Agreement based on the individual facts

and circumstances of this case.  Among the facts considered were the following: (a) a

conviction (including a guilty plea) would likely result in FCS's mandatory exclusion

from all federal health care programs under 42 U.S.C. § 1320a-7 for a period of at

least five years, which would result in substantial consequences to patients covered

by the federal healthcare programs, patients outside the federal healthcare programs,

patients involved in ongoing clinical trials, and to the Company's employees; (b)

beginning in October 2018, FCS provided substantial cooperation with the United

States' investigation into a conspiracy to suppress and eliminate competition by

allocating medical oncology treatments and radiation oncology treatments for cancer

patients in Southwest Florida; (c) FCS's cooperation has included facilitating the

interviews of current and former employees, including former employees that had

relocated overseas; (d) FCS agreed to cooperate in the United States' ongoing

investigation into criminal antitrust violations related to oncology treatments;

(e) FCS's cooperation has allowed the United States to advance its investigation into

criminal antitrust conduct among oncology providers; (f) FCS's cooperation remains

ongoing; and (g) this Agreement can ensure that integrity has been restored to FCS's

4

operations and preserves its financial viability while preserving the United States'
ability to prosecute it should material breaches occur.

Cooperation Obligations

6. Until the date upon which all investigations and prosecutions, whether of
former employees of the Company or other individuals or entities, arising out of the
conduct described in this Agreement are concluded, whether or not they are
concluded within the Term specified in Paragraph 4, FCS shall cooperate fully and
truthfully with the United States in the current federal investigation of violations of
federal antitrust and related criminal laws related to oncology treatments, and any
litigation or other proceedings arising or resulting from such investigation to which
the United States is a party (collectively "Federal Proceeding"). Federal Proceeding
includes, but is not limited to, an investigation, prosecution, litigation, or other
proceeding regarding obstruction of, the making of a false statement or declaration
in, the commission of perjury or subornation of perjury in, the commission of
contempt in, or conspiracy to commit such offenses in, a Federal Proceeding. The
full, truthful, and continuing cooperation of FCS will include but not be limited to:

(a) producing to the United States all documents, information, and other
materials, wherever located, not protected under the attorney-client privilege or the
work-product doctrine, and with translations into English, in the possession,
custody, or control of FCS, that are requested by the United States in connection
with any Federal Proceeding;

(b) using its best efforts to secure the full, truthful, and continuing cooperation of its current and former partners, members, officers, directors, employees, and agents as may be requested by the United States.  Such efforts will include, but not be limited to, making these persons available in the United States and at other mutually agreed-upon locations at FCS's expense for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding; and

(c) with respect to any information, testimony, documents, records or other tangible evidence provided to the United States pursuant to this Agreement, FCS consents to any and all disclosures, subject to applicable law and regulations, to other governmental authorities, including United States federal, state, and local authorities and those of a foreign government, of such materials as the United States, in its sole discretion, shall deem to be relevant and necessary to accomplish a legitimate governmental or regulatory purpose.

7.  In addition to the obligations described above, during the Term of the Agreement, should FCS learn of or possess credible evidence or allegations of criminal violations of United States law by FCS or its subsidiaries or corporate affiliates, or by any present or former officers, directors, employees, or agents, FCS shall promptly report such evidence or allegations to the United States.  Any information that FCS thus discloses to the United States will likely include proprietary, financial, confidential, and competitive business information.  Public disclosure of the information and reports could discourage cooperation, impede

6

pending or potential government investigations, and thus undermine the United

States' objectives in obtaining such reports.  For these reasons, among others, the

information and reports and the contents thereof are intended to remain and shall

remain nonpublic, except as otherwise agreed to by the parties in writing, or except

to the extent that the United States determines in its sole discretion that disclosure

would be in furtherance of its discharge of its duties and responsibilities or is

otherwise required by law.

Penalty, Remedial Measures, and Restitution

8.  The United States and FCS agree that FCS will pay a monetary penalty in

the amount of $100,000,000, plus interest beginning June 1, 2020 and computed

daily at a rate equal to the weekly average 1-year constant maturity Treasury yield, as

published by the Board of Governors of the Federal Reserve System, for the calendar

week preceding June 1, 2020, to the United States Treasury.  FCS agrees to pay the

penalty in the following installments: $40,000,000 by June 1, 2020; an additional

$10,000,000 plus interest by June 1, 2021; an additional $16,627,384 plus interest by

December 31, 2021; an additional $16,627,384 plus interest by December 31, 2022;

and an additional $16,745,232 plus interest by December 31, 2023.  FCS may prepay

the monetary penalty in full or in part at any time and in one or more installments.

There shall be no prepayment fees charged nor any discounts granted for

prepayment.  All payments made by FCS shall be applied first to interest accrued

through the date of payment, and any excess shall be applied to the outstanding

principal balance of the monetary penalty, with such excess portion of the payments

allocated to principal being applied to the scheduled installments described in the second sentence of this Paragraph 8 in chronological order. Interest shall be calculated hereunder using the rate set forth above on a simple, non-compounding basis. FCS and the United States agree that this penalty is appropriate given the facts and circumstances of this case, including the Relevant Considerations described in Paragraph 5.

9. The penalty set forth in Paragraph 8 is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the United States that $100,000,000 is the maximum penalty that may be imposed in any future prosecution in the event of a breach of this Agreement, and the United States is not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the United States agrees that under those circumstances, it will recommend to the Court that any amount paid under this Agreement should be offset against any fine the Court imposes as part of a future judgment. FCS acknowledges that no tax deduction may be sought, and agrees that no tax deduction will be sought, in the United States, or elsewhere in connection with the payment of any part of this penalty. In the event that the United States, pursuant to Paragraphs 17 through 18, determines that FCS has breached the Agreement and the Company fails to effect a cure (as provided in Paragraph 18, if applicable), the entire amount of the monetary penalty, less amounts already paid (if any), shall be due and owing within ten (10) business days after receipt by FCS from the United States of written notice of breach. If FCS fails to either cure or pay the balance due within ten (10)

business days of receipt of the written notice of breach, FCS will consent to entry of a civil judgment for the full balance due plus all reasonable costs incurred in the civil action, including attorney's fees and expenses; will provide the United States with its most recent audited financial statement; and will not oppose any collection action undertaken by the United States to satisfy the civil judgment.

10.   FCS agrees to waive and not enforce any and all non-compete, non-solicitation, and/or non-interference provisions restricting competition with FCS in the provision of oncology services or solicitation of FCS' employees in any contract or agreement that would otherwise apply to any current or former partners, members, officers, directors, employees, and agents of FCS or any of its subsidiaries or corporate affiliates who, during the Term of this Agreement, join an oncology practice in Southwest Florida or open an oncology practice in Southwest Florida. Further, within thirty (30) calendar days after acceptance of this Agreement, FCS agrees to furnish via email to all of its current partners, members, officers, directors, employees, and agents of FCS or any of its subsidiaries or its corporate affiliates a copy of this Deferred Prosecution Agreement and a cover letter in a form attached as Exhibit 1.

11.   In light of the availability of civil causes of action, and the class action already settled by FCS, *County of Monmouth, New Jersey v. Florida Cancer Specialists, P.L. et al*, Case 2:18-cv-00201-SDM-MRM, in the United States District Court for the Middle District of Florida, Fort Myers Division, this Agreement does not include any provision for monetary restitution.

## Conditional Release from Liability

12.  In return for the full and truthful cooperation of FCS, and compliance with the other terms and conditions of this Agreement:

(a) The United States agrees that, except as provided by this Agreement, it will not bring criminal charges against FCS for any act or offense committed before the date of signature of this Agreement, in furtherance of an antitrust conspiracy involving the allocation of medical oncology treatments and radiation oncology treatments for cancer patients in Southwest Florida; and

(b) Failure by the Company to comply fully with its cooperation obligations under Paragraphs 6–7 will void the United States' agreement in Paragraph 12(a), and FCS may be prosecuted criminally for any federal crime of which the United States has knowledge; and

(c) The United States' agreement in Paragraph 12(a) does not apply to subornation of perjury (18 U.S.C. § 1622), false statements (18 U.S.C. § 1001), obstruction of justice (18 U.S.C. § 1503 *et seq.*), contempt (18 U.S.C. §§ 401–402), or conspiracy to commit such offenses. Its agreement in Paragraph 12(a) also does not apply to civil matters of any kind, any civil or criminal violation of the federal tax or securities laws or conspiracy to commit such offenses, or any crimes of violence.

## Related Administrative Proceedings

13.  FCS understands that it may be subject to suspension or debarment action by state or federal agencies other than the United States Department of Justice Antitrust Division based upon this Agreement, and that this Agreement in no way

controls what action, if any, other agencies may take.  However, the United States agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action of the fact, manner, and extent of the cooperation of FCS as a matter for that agency to consider before determining what action, if any, to take.

### Corporate Compliance Program

14.  FCS represents that it has implemented and will continue to implement a compliance program designed to prevent and detect criminal antitrust violations throughout its operations, including those of its corporate affiliates and subsidiaries. Implementation of these policies and procedures shall not be construed in any future enforcement proceeding as providing immunity or amnesty for any crimes not disclosed to the United States as of the date of this Agreement for which FCS would otherwise be responsible.

### Deferred Prosecution

15.  In consideration of: (a) the past and future cooperation of FCS described in Paragraphs 6–7; (b) FCS's payment of a monetary penalty; and (c) FCS's implementation and maintenance of remedial measures described above, the United States agrees that any prosecution of FCS for the conduct set forth in the attached Statement of Facts be and hereby is deferred for the Term of this Agreement.

16.  The United States further agrees that if FCS fully complies with all obligations under this Agreement, the United States will not continue the criminal prosecution of FCS described in Paragraph 1 and, at the conclusion of the Term, this

Agreement shall expire, except for the Cooperation Obligations provided in Paragraphs 6–7. Within thirty (30) calendar days following the Agreement's expiration, the United States shall seek dismissal with prejudice of the criminal Information described in Paragraph 1.

Breach

17. If, during the Term of this Agreement, the United States determines, in its sole discretion, that FCS (a) committed any felony under United States federal law subsequent to the signing of this Agreement, (b) at any time provided to the United States in connection with this Agreement deliberately false, incomplete, or misleading information, including in connection with its disclosure of information about individual culpability, (c) fails to cooperate as set forth in Paragraphs 6–7 of this Agreement, or (d) otherwise breached the Agreement, FCS shall thereafter be subject to prosecution for any federal criminal violation of which the United States has knowledge, including the charges in the Information described in Paragraph 1, which may be pursued by the United States in the United States District Court for the Middle District of Florida, Fort Myers Division or any other appropriate venue. Any such prosecution may be premised on information provided by FCS, or its current or former partners, members, officers, directors, employees, or agents. Any such prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against FCS notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this

12

Agreement, FCS agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year.

18. In the event that the United States determines that FCS has breached this Agreement, the United States agrees to provide FCS with written notice of such breach prior to instituting any prosecution resulting from such breach. FCS shall, within thirty (30) calendar days after receipt of such notice, have the opportunity to respond to the United States in writing to explain the nature and circumstances of such breach, as well as the actions FCS has taken to address and remediate the situation, which explanation the United States shall consider in determining whether to institute a prosecution.

19. In the event that the United States determines that FCS has breached this Agreement: (a) all statements made by or on behalf of FCS to the United States or to the Court, including the attached Statement of Facts, and any testimony given by FCS before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the United States against FCS; and (b) FCS shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal law or rule that statements made by or on behalf of FCS prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed. The decision

13

whether the conduct or statements of any current member, partner, director, employee, agent, or any person acting on behalf of, or at the direction of, FCS will be imputed to FCS for the purpose of determining whether FCS has breached any provision of this Agreement shall be in the sole discretion of the United States.

20.  FCS acknowledges that the United States has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if FCS breaches this Agreement and this matter proceeds to judgment.  FCS further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

21.  On the date that the period of deferred prosecution specified in this Agreement expires, FCS, by the President and Managing Physician, and the Chief Executive Officer of the Company, will certify to the United States that FCS has met its disclosure obligations pursuant to this Agreement.  Each certification will be deemed a material statement and representation by FCS to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

<u>Sale or Merger of FCS</u>

22.  Except as may otherwise be agreed by the parties in connection with a particular transaction, FCS agrees that in the event that, during the Term, it undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to its consolidated operations, or to the

operations of any subsidiaries or corporate affiliates involved in the conduct

described in the attached Statement of Facts, as they exist as of the date of this

Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or

other change in corporate form, it shall include in any contract for sale, merger,

transfer, or other change in corporate form a provision binding the purchaser, or any

successor in interest thereto, to the obligations described in this Agreement.  The

purchaser or successor in interest must also agree in writing that the United States'

ability to enforce all provisions of this Agreement, including to determine that it has

been breached, is applicable in full force to that entity.  FCS agrees that the failure to

include these provisions in the transaction will make any such transaction null and

void.  FCS shall provide notice to the United States at least thirty (30) calendar days

prior to undertaking any such sale, merger, transfer, or other change in corporate

form.  The United States shall notify FCS prior to such transaction (or series of

transactions) if it determines that the transaction(s) will have the effect of

circumventing or frustrating the enforcement purposes of this Agreement.  If at any

time during the Term FCS engages in a transaction(s) that has the effect of

circumventing or frustrating the purposes of this Agreement, the United States may

deem it a breach of this Agreement pursuant to Paragraphs 17–21 of this Agreement.

Nothing herein shall restrict FCS from indemnifying (or otherwise holding harmless)

the purchaser or successor in interest for penalties or other costs arising from any

conduct that may have occurred prior to the date of the transaction, so long as such

indemnification does not have the effect of circumventing or frustrating the purposes of this Agreement, as determined by the United States.

### Public Statements by FCS

23.   FCS expressly agrees that it shall not, through present or future attorneys, partners, members, officers, directors, employees, agents or any other person authorized to speak for FCS or its subsidiaries or corporate affiliates, make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by FCS set forth above or any of the facts set forth in the Statement of Facts.  Any such contradictory statement shall, subject to cure rights of FCS described below, constitute a breach of this Agreement and FCS thereafter shall be subject to prosecution as set forth in this Agreement.  The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be imputed to FCS for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the United States.  If the United States determines that a public statement by any such person contradicts in whole or in part any fact(s) set forth in the Statement of Facts, the United States shall so notify FCS, and FCS may avoid a breach of this Agreement by publicly repudiating such statement(s) within five (5) business days after notification.  FCS shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, any fact(s) set forth in the Statement of Facts.  This Paragraph does not apply to any statement made by

16

any present or former member, partner, officer, director, employee, or agent of FCS in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of FCS.

24. FCS agrees that if it or any of its direct or indirect subsidiaries, or its corporate affiliates issues a press release or holds any press conference in connection with this Agreement, FCS shall first consult the United States to determine: (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the United States and FCS; and (b) whether the United States has no objection to the release. Statements at any press conference concerning this matter shall be consistent with such a press release.

<u>Notice</u>

25. Any notice to the United States under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to F. Patrick Hallagan, 450 Fifth Street, NW, Washington, DC 20530. Any notice to FCS under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to the Chief Legal Officer and General Counsel, Florida Cancer Specialists & Research Institute, LLC with a copy to its attorney, Lisa M. Noller, Foley & Lardner LLP, 321 North Clark Street, Suite 3000, Chicago, IL 60654-4762. Notice shall be effective upon actual receipt by the United States or FCS.

<u>Complete Agreement</u>

26.  This Agreement and its attachments set forth all the terms of this Deferred Prosecution Agreement between FCS and the United States.  No amendments, modifications or additions to this Agreement shall be valid unless they are in writing and signed by the United States, the attorneys for FCS, and a duly authorized representative of FCS.

DATED: April 30, 2020
_____

Respectfully submitted,

BY: _____
THOMAS P. CLARK, ESQ.
Chief Legal Officer

Florida Cancer Specialists
& Research Institute, LLC

BY: _____
F. PATRICK HALLAGAN
EYITAYO ST. MATTHEW-DANIEL
WILLIAM J. VIGEN
KATHERINE CALLE
Trial Attorneys

U.S. Department of Justice
Antitrust Division

BY: _____
LISA M. NOLLER

Counsel for Florida Cancer Specialists
& Research Institute, LLC

**Attachment A: Statement of Facts**

Oncology was the branch of medical science dealing with tumors, including the diagnosis and treatment of cancer.  An oncologist was a doctor who treats cancer and provides medical care for a person diagnosed with cancer.  The field of oncology had three major areas or specialties: medical, radiation, and surgical.  A medical oncologist treated cancer using chemotherapy or other medications.  A radiation oncologist treated cancer using radiation therapy.

Different types of oncologists often worked together to create a patient's overall treatment plan that combined different types of treatments, including a combination of chemotherapy (administered by medical oncologists), radiation therapy (administered by radiation oncologists), and surgery.

Oncologists typically treated cancer patients together with other oncologists as part of a practice group.  An oncology practice could have included one or more oncologist specialists, including medical oncologists and radiation oncologists.

Cancer patients typically relied on private or public health insurance to pay for oncology treatments provided by oncologists or oncology practices.

From in or about 1999 and continuing until at least September 2016 ("the relevant time period"), Florida Cancer Specialists & Research Institute, LLC ("FCS"), a limited liability company organized and existing under the laws of Florida with its principal place of business in Fort Myers, Florida, was engaged in the practice of medicine, primarily in the field of oncology.  FCS was one of the largest privately held oncology practices in the United States with over 200

physicians and over 2,000 employees. FCS operated approximately 100 centers throughout the State of Florida offering a range of treatment options, including providing both medical oncology treatments and radiation oncology treatments.

During the relevant time period, Oncology Company A, an organization existing under the laws of Florida with its principal place of business in Fort Myers, Florida, was engaged in the practice of medicine, primarily in the field of oncology. Oncology Company A operated throughout the State of Florida, offering a range of treatment options, including providing both medical oncology treatments and radiation oncology treatments.

During the relevant time period, FCS, through certain of its partners, members, officers, employees and agents, including its former president and managing physician, conspired with Oncology Company A and other persons and entities to suppress and eliminate competition by agreeing to allocate medical oncology treatments and radiation oncology treatments for cancer patients in Southwest Florida, reserving medical oncology for FCS and radiation oncology for Oncology Company A. FCS, through certain of its partners, members, officers, employees, and agents, engaged in discussions with co-conspirators, including Oncology Company A, that competed with FCS in the provision of oncology treatments. During these discussions, FCS and Oncology Company A reached an agreement to allocate medical oncology treatments and radiation oncology treatments in Southwest Florida. FCS's revenues from the provision of oncology treatments affected by this conspiracy totaled more than $950,000,000.

Specifically, during the relevant time period, FCS and its co-conspirators agreed that FCS would be allocated the provision of medical oncology treatments in Southwest Florida, and, in turn, that Oncology Company A would be allocated the provision of radiation oncology treatments in Southwest Florida.  Pursuant to this agreement, FCS provided medical oncology treatments in Southwest Florida, but did not provide radiation oncology treatments in Southwest Florida.  Pursuant to this agreement, Oncology Company A provided radiation oncology treatments in Southwest Florida, but did not provide medical oncology treatments in Southwest Florida.

During the relevant time period, the business activities of FCS and its co-conspirators in connection with oncology treatments affected by this conspiracy were within the flow of, and substantially affected, interstate trade and commerce. Pharmaceutical drugs and treatments, equipment and supplies necessary for the provision of oncology treatments, patients receiving oncology treatments, as well as payments and reimbursements for oncology treatments, traveled in interstate commerce.

Oncology treatments were provided by FCS and its co-conspirators to customers and patients in this District and acts in furtherance of this conspiracy were carried out within the Middle District of Florida, Fort Myers Division.